**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Laura A. Silva,<br><br>                         Plaintiff,<br><br>          -v-<br><br>Seven Rock Life Corp.,<br><br>                    Defendant. | 2:23-cv-6407<br>(NJC) (SIL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Laura A. Silva ("Silva") initiated this putative class action against Defendant Seven Rock Life Corporation ("Seven Rock Life" and "Defendant") on August 28, 2023, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 ("Section 227"), and Oklahoma's Telephone Solicitation Act of 2002 ("OTSA"), Okla. Stat. tit. 15 § 775C.1 ("Section 775C"), *et seq*. (Compl. ¶ 1.) The Clerk of Court entered a certificate of default against Seven Rock Life on December 1, 2023, at Silva's request after Seven Rock Life failed to appear. (ECF Nos. 7, 8.) The Court denied Silva's first motion for default judgment without prejudice and with leave to renew. (ECF No. 9; Elec. Order, Feb. 13, 2024.) Before the Court is Silva's unopposed Renewed Motion for Default Judgment, which seeks a total of $15,000 in damages as well as post-judgment interest for violations of the TCPA and OTSA. (Renewed Mot. for Default Judgment ("Mot.") at 2, ECF No. 11.)

For the reasons that follow, the Court grants the Renewed Motion for Default Judgment and awards Silva $13,500 in statutory damages.

## JURISDICTION

The Court has federal question jurisdiction over Silva's TCPA claim pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Silva's OTSA claim pursuant to 28 U.S.C. § 1367(a) because this claim is part of the same case or controversy and arises out of the same common nucleus of operative facts as the TCPA claim. Venue is proper under 28 U.S.C. § 1391(b) and (c) because Seven Rock Life resides, provides, and markets its services in this judicial district. (*See* Compl. ¶ 6.)

When considering a motion for default judgment, a court "may first assure itself that it has personal jurisdiction over the defendant." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011). Since a judgment rendered against a defendant over whom the court lacks personal jurisdiction can be vacated pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *Foshan Shunde Zinrunlian Textile Co. v. Asia 153 Ltd.*, No. 14-cv-4697 (DLI) (SMG), 2017 WL 696025, at *2 (E.D.N.Y. Jan. 30, 2017) (quotation marks omitted). Here, "a *sua sponte* assessment of personal jurisdiction is appropriate" because Seven Rock Life failed to appear in this action. *Id.*

The Court has personal jurisdiction over Seven Rock Life because it is a New York resident. The Complaint alleges that Seven Rock Life is a company headquartered in Suffolk County, New York. (Compl. ¶ 9.) This Court has personal jurisdiction over residents of the state of New York. *See* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1064 (4th Ed. 2020) (describing the defendant's residence in the forum state as one of the oldest bases of personal jurisdiction); *cf. Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (a court may assert personal jurisdiction over foreign defendants "when their affiliations

2

with the State are so continuous and systematic as to render them essentially at home in the forum State.") (quotation marks omitted). Additionally, Seven Rock Life was properly served by service of the Summons and Complaint on an individual designated to accept service on its behalf pursuant to Rule 4(h), Fed. R. Civ. P. (*See* ECF No. 16.)

## BACKGROUND

The following facts are taken from Silva's Complaint and the Renewed Motion for Default Judgment and supporting submissions. Seven Rock Life is a retail company that offers a collection of fashion apparel. (Compl. ¶ 3.) Beginning on June 13, 2023, Seven Rock Life sent fifteen telemarketing text messages to Silva's cellular telephone number. (*Id.* ¶ 12; Shamis Decl ¶ 8, ECF No. 13; *id.*, Ex. D, ECF No. 13-4.) These text messages were telemarketing because they encouraged the future purchase of Seven Rock Life apparel by advertising the company's promotions. (Compl. ¶¶ 15–16.) The text messages were not made for an emergency purpose or to collect a debt. (*Id.* ¶ 18.)

Seven Rock Life sent Silva the texts from this judicial district and from telephone number 1-844-617-2347, a number "which upon information and belief is owned and operated by Defendant or on behalf of Defendant." (*Id.* ¶¶ 17, 24.) Each text from the number began "SRL: . . . ." (Shamis Decl., Ex. D.) The number is not capable of receiving telephone calls and does not connect a caller to Seven Rock Life. (*Id.* ¶ 25.) Seven Rock Life sent the texts to Silva's cellular telephone number, which she uses for personal purposes and which is the primary means of reaching her at her residence. (*Id.* ¶¶ 12, 14.) Silva is the sole user of the number and is financially responsible for its phone service. (*Id.* ¶ 21.) At all times relevant to this action, Silva's

number has been registered with the national do-not-call registry.[1] (*Id.* ¶ 22.) Silva did not provide Seven Rock Life with written consent to be contacted and has no existing business relationship with the company. (*Id.* ¶¶ 19–20.)

## PROCEDURAL HISTORY

Silva filed the Complaint on August 28, 2023. (Compl.) The Complaint alleges that Seven Rock Life is headquartered in Suffolk County. (*Id.* ¶ 9.) A summons was issued on August 30, 2023, and Silva directed service of the summons and Complaint to an address for Seven Rock Life in Buffalo, New York. (ECF No. 4.) The summons was returned executed on September 6, 2023. (ECF No. 6.)

On October 4, 2023, Silva requested a certificate of default, which the Clerk of Court entered on December 1, 2023. (ECF Nos. 7, 8.) On January 2, 2024, Silva filed a motion for default judgment and a supporting declaration. (ECF Nos. 9–10.) On February 13, 2024, the Court denied Silva's motion with leave to renew, noting that the motion failed to include a memorandum of law and proof of service on all parties as required under the Local Rules. (Elec. Order, Feb. 13, 2024.) On February 19, 2024, Silva timely filed a Renewed Motion for Default Judgment and supporting documentation. (Mot., ECF Nos. 11–15.) Silva directed service of the Renewed Motion for Default Judgment on the same Buffalo, New York address. (ECF No. 15.)

On May 20, 2024, the Court ordered Silva to demonstrate by May 24, 2024, that service of the Complaint was legally sufficient and that Silva complied with the requirement to mail the papers submitted to the Court pursuant to Local Civil Rule 55.2(a) and (b) to Seven Rock Life's

---

[1] The Complaint states that Silva registered her number with the national do-not-call registry "on January October [sic] 12, 2019," and the Shamis Declaration states that Silva registered on October 12, 2019. (Compl. ¶ 22; Shamis Decl. ¶ 8.) Both January 12, 2019 and October 12, 2019 predate the June 2023 text messages from Seven Rock Life to Silva's cellular telephone number.

last known business address. (Order to Show Cause, May 20, 2024.) Silva responded on May 24, 2024, stating that service of the Complaint and Renewed Motion for Default Judgment were perfected on Seven Rock Life's registered agent in Buffalo, New York as identified on the company's registration page with the New York Department of State Division of Corporations (ECF Nos. 16, 16-1.) On June 1, 2024, the Court issued an Order noting that Silva's response failed to demonstrate that the Renewed Motion for Default Judgment and supporting papers were mailed to Seven Rock Life at its last known business address as required under Local Civil Rule 55.2(c), and that the Better Business Bureau's website lists a Suffolk County address for Seven Rock Life at 1 Hewitt Square, East Northport, NY 11731-2519. (Elec. Order, June 1, 2024.) On June 4, 2024, Silva filed an attorney affidavit and proof of mailing showing service of the Renewed Motion for Default Judgment and supporting papers on Seven Rock Life's East Northport address. (ECF Nos. 17–18.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55, default judgments are governed by a two-step process. First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. Fed. R. Civ. P. 55(a); *see also* Local Civil Rule 55.2. After the Clerk issues a certificate of default, a party may apply for entry of a default judgment against the defaulting party. Fed. R. Civ. P. 55(b); *see also* Local Civil Rule 55.2(b). The decision to grant a motion for default judgment is left to the sound discretion of the district court. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam) (reviewing district court's decision entering a default judgment for abuse of discretion.); *see also No Limit Auto Enters., Inc. v. No Limit Auto Body,*

*Inc.*, No. 21CV04755AMDJMW, 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023).

A default constitutes an admission of all well-pled factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co.*, No. 122CV5053FBPK, 2023 WL 6318618, at *4 (E.D.N.Y. Sept. 12, 2023) (same), *report and recommendation adopted*, No. 122CV5053FBPK, 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023). A plaintiff must still demonstrate, however, that the factual allegations set forth in the complaint, accepted as true, state valid claims. *See Bricklayers*, 779 F.3d at 187 (following entry of "default against defendants," a court "may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("[A] court is required to accept all of the . . . factual allegations [of the party moving for default judgment] as true and draw all reasonable inferences in its favor . . . but it is also required to determine whether [those] allegations establish [the defaulting party's] liability as a matter of law."); *see also Mickalis Pawn Shop*, 645 F.3d at 137 (same). To determine liability, courts may consider "uncontroverted documentary evidence" submitted with the motion for default judgment as well as the factual allegations in the complaint. *See Bricklayers*, 779 F.3d at 189.[2]

---

[2] The Second Circuit has relied on "uncontroverted documentary evidence" in affirming the district court's decision to enter a default judgment against an individual defendant in an action brought under the Employee Retirement Income Security Act ("ERISA"). *See Bricklayers*, 779 F.3d at 189. Following that decision, judges of this Court have considered uncontroverted documentary evidence when assessing a defaulting party's liability on a default judgment motion. *See, e.g., Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-CV-3841 (LDH), 2018 WL 4327923 (E.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. Cent. Produce Corp. v. 34-18 M&M Corp.*, No. 17CV3841LDHRLM, 2018 WL 4326925 (E.D.N.Y. Sept. 10,

The Court must therefore ensure that Silva has satisfied all of the required procedural steps in moving for a default judgment, *see* Local Civ. R. 55.2, and that the allegations in the Complaint, when accepted as true, establish liability as a matter of law.

## DISCUSSION

### I.     Procedural Compliance

Under the Local Civil Rules, a motion must include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. Local Civil Rule 7.1(a)(1)–(3). Local Civil Rule 55 also requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court. Local Civil Rule 55.2(b)–(c).

Silva's Renewed Motion for Default Judgment is procedurally proper. The Renewed Motion for Default Judgment complies with the Local Civil Rules because it is accompanied by: a memorandum of law (Mem., ECF No. 12); a declaration in support (Shamis Decl., ECF No. 13); a statement of damages (*id.*); a proposed judgment (ECF No. 11-4); a copy of the complaint (ECF No. 13-1); a copy of the certificate of default (ECF No. 11-2); and proof that the motion

---

2018) (considering the complaint and additional declarations); *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. CV 14-1695 ARR MDG, 2015 WL 1529653 (E.D.N.Y. Mar. 31, 2015) (same). Even after the Second Circuit's decision in *Bricklayers*, however, other judges of this Court have declined to consider documentary evidence when assessing the defaulting party's liability,. *See, e.g., Ferrera v. Tire Shop Ctr.*, No. 14 CV 04657 FB LB, 2015 WL 3562624, at *4 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-CV-04657 FB LB, 2015 WL 3604078 (E.D.N.Y. June 5, 2015).

and supporting documents were mailed to Defendant's last known business address (ECF No. 15). Additionally, service was proper. Seven Rock Life was served on September 5, 2023 via service on its registered agent and Silva mailed copies of the Renewed Motion and Supporting submissions to Seven Rock Life's Buffalo and East Northport addresses. ECF No. 11-1; ECF No. 16 ¶¶ 1–2; *see* Fed. R. Civ. P. 4(h)(1)(B) (a corporation may be served via an agent authorized to receive service of process). Accordingly, the Court finds that Silva's Renewed Motion for Default Judgment is procedurally proper and now turns to its merits.

## II.    Default Judgment Factors

In determining whether to enter a default judgment, this Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Pecarsky v. Galaxiworld.com, Ltd*., 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are: (1) "the willfulness of default," (2) "the existence of a meritorious defense," and (3) "the possibility of prejudice to plaintiffs should the default judgment be vacated." *Pecarsky*, 249 F.3d at 171; s*ee also ADI Glob. Distrib. v. Green*, No. 20CV03869AMDJMW, 2023 WL 3355049 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, No. 20CV3869AMDJMW, 2023 WL 3346499 (E.D.N.Y. May 10, 2023).

Consideration of these factors weighs heavily toward the entry of a default judgment here, where Seven Rock Life has failed to appear. *See ADI Glob. Distrib.*, 2023 WL 3355049, at *4. As to the first factor, Seven Rock Life's failure to respond to the Complaint demonstrates that the default was willful. *See Trs. of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. CV 12-6317 ADS AKT, 2013 WL 4042357, at *3 (E.D.N.Y. Aug. 8, 2013) (when a defendant is continuously and

completely unresponsive, the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). As to the second factor, the Court cannot conclude there is any meritorious defense to Silva's allegations because Seven Rock Life did not appear and no defense of any kind has been presented to the Court. *See Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at \*3–4 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court."), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012). As to the third factor, the non-defaulting party—Silva—would be prejudiced if the Renewed Motion for Default Judgment were denied in this case, "as there are no additional steps available to secure relief in this Court." *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at \*9 (Mar. 1, 2018), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018).

As a result, all three factors permit entry of a default judgment against Seven Rock Life.

## III.    Liability

Silva moves for default judgment on the TCPA claim and the claim under Section 775C.3.A of the OTSA. As discussed above, "[w]ell-pleaded allegations in a complaint are presumed true when a defendant fails to present a defense to the court." *ADI Glob. Distrib.*, 2023 WL 3355049 at \*5; *see also* Wright & Miller et al., *Federal Practice and Procedure* § 2688.1 ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *J & J Sports Prods., Inc. v. Daley*, No. 06-CV-

0238, 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007) ("conclusory allegations based on information and belief" are insufficient to support a finding of default-based liability). In addition to the factual allegations of the complaint, a court may consider "uncontroverted documentary evidence" submitted with the motion for default judgment. *See Bricklayers*, 779 F.3d at 189; *Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-CV-3841 (LDH), 2018 WL 4327923 (E.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. Cent. Produce Corp. v. 34-18 M&M Corp.*, No. 17CV3841LDHRLM, 2018 WL 4326925 (E.D.N.Y. Sept. 10, 2018) (considering the complaint and additional declarations); *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. CV 14-1695 ARR MDG, 2015 WL 1529653 (E.D.N.Y. Mar. 31, 2015) (same); *Cabrera v. 1560 Chirp Corp.*, No. 15-cv-8194, 2017 WL 1289349, at *11 (S.D.N.Y. March 6, 2017) (same).

A.  Silva Establishes that Seven Rock Life Violated the TCPA

Section 227(c)(5) of the TCPA "makes it unlawful for any person or entity to initiate more than one telephone solicitation to a residential telephone number that is on the national do-not-call registry ("DNCR") within any 12-month period." *Oparaji v. Home Retention Corp.*, No. 21 CV 2758 (ENV)(LB), 2023 WL 7687217, at *1 (E.D.N.Y. Sept. 26, 2023); *see* 47 U.S.C. § 227(c)(5) (providing a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection"); 47 C.F.R. § 64.1200(c)(2) (providing that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry"). The prohibition applies to "any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e). A claim under the

TCPA is subject to a four-year statute of limitations period that runs from receipt of the allegedly

unlawful solicitation. *See Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013).

Here, Silva has stated a claim for relief under the TCPA. Silva's claim is timely because

it was filed on August 28, 2023, within four years of her receipt of the June and July 2023

messages. (*See generally* Compl.) Additionally, Silva alleges that she received more than one

unsolicited telephone solicitation within a 12-month period despite being registered on the

national do-not-call registry since winter 2019 because she alleges that she received fifteen

telemarketing texts from Seven Rock Life during June and July 2023 and she had never provided

Seven Rock Life written consent to be contacted. (Compl. ¶¶ 12, 15–16, 19–20, 22; Shamis

Decl., Ex. D; Shamis Decl. ¶ 8.) In support of her allegations, Silva attaches screenshots of

fifteen text messages sent over four weeks that all began "SRL: . . ." and contain generic

marketing material encouraging Silva to buy Seven Rock Life's apparel. (Shamis Decl., Ex. D.)

Because Silva's uncontroverted allegations and evidence show that she received more than one

telemarketing text within a 12-month period, she has stated a violation of Section 227(c)(5).

### B. Silva Establishes that Seven Rock Life Violated the OTSA

The OTSA provides in relevant part that "[a] person may not make or knowingly allow a

commercial telephonic sales call to be made if such call involves an automated system for the

selection or dialing of telephone numbers . . . without the prior express written consent of the

called party."[3] Okla. Stat. tit. 15 § 775C.3. The statute defines "prior express written consent" as

"a written agreement" "clearly authoriz[ing]" the placement of solicitation calls, texts, or

---

[3] The Renewed Motion does not address whether the OTSC's reference to "person" encompasses
corporations. (*See generally*, Mem.) Because there is no caselaw interpreting the OTSA, the
Court interprets the term "person" to include corporate entities who are shown to engage in
conduct prohibited under the statute.

voicemail delivered using "an automated system for the selection or dialing of telephone numbers" and bearing "the signature of the called party," the authorized telephone number, and certain "clear and conspicuous" disclosures. Okla. Stat. tit. 15 §§ 775C.2; 775C.3.

The OTSA does not define "an automated system for the selection or dialing of telephone numbers" and there does not appear to be any case law on the statute or this definition. The Court notes that both the OTSA and the TCPA aim to prohibit telephone solicitation calls without the express consent of the called party and contain prohibitions regarding automatic telephone dialing systems. *Compare* Okla. Stat. tit. 15 § 775C.3.A *with* 47 U.S.C. § 227(b)(1)(a)(iii) (prohibiting any person from making "any call . . . using an automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service" without prior express consent from the recipient). Accordingly, the Court looks to the definition of an automatic telephone dialing system ("ATDS") under the TCPA to determine whether Silva has established that Seven Rock Life used an ATDS to send her telemarketing text messages.

The TCPA defines an ATDS as equipment that can "(A) . . . store or produce telephone numbers to be called, using a random or sequential number generator; and (B) . . . dial such numbers." 47 U.S.C. § 227(a)(1). A plaintiff must allege facts that support a reasonable inference that the equipment had the capacity to "'store, produce, or call randomly or sequentially generated telephone numbers.'" *Levy, v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). A violation of the TCPA need not be pled with particularity and courts permit plaintiffs to allege facts allowing for a reasonable inference that an ATDS was used, including that the texts contain "generic, impersonal content, and the volume or timing of the calls or

messages." *Krady v. Eleven Salon Spa*, No. 16CV5999MKBRML, 2017 WL 6541443, at *4 (E.D.N.Y. July 28, 2017), *report and recommendation adopted*, No. 16CV5999MKBRML, 2017 WL 6542462 (E.D.N.Y. Dec. 21, 2017).

      Here, Silva has stated a claim for relief under the OTSA. It appears that a violation of the OTSA is governed by a three-year statute of limitations, so Silva's claim is timely. *See* Okla. Stat. Ann. tit. 12, § 95 (West) (providing for a three-year limitations period for "an action upon a liability created by statute other than a forfeiture or penalty"). Silva establishes that Seven Rock Life sent her fifteen text messages via an ATDS because she alleges that Seven Rock Life sent the texts through a platform that has the capacity to select and dial numbers automatically from a list and to schedule the time and date for future transmission of text messages. (Compl. ¶¶ 35–36.) The screenshots of the messages show that the messages all began "SRL: . . ." and contained generic, impersonal marketing material. *See Krady*, 2017 WL 6541443, at *4 (finding plaintiff established use of an ATDS via allegations that they received thirty messages over two months that were impersonal, generic text messages from a short code number). For example, a message received on June 20, 2023 from "SRL" reads, "Your [$24.52] Store Credit Balance Ends Tomorrow – 6.21.23 {Reminder Notice} Add $50+ to cart & use code at checkout: CR2452 https://klv3.io/0/agpAGE." (Shamis Decl., Ex. D at 1.) Additionally, Silva alleges that she never gave Seven Rock Life her prior express written consent to receive the text messages. (Compl. ¶¶ 12, 15–16, 19–20; Shamis Decl. ¶ 8.) Therefore, Silva's uncontroverted allegations establish Seven Rock Life's liability under the OTSA.

### IV.     Damages

A.  <u>Silva is Entitled to Damages Under the TCPA</u>

"A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may sue to recover "up to $500 in damages for each such violation." 47 U.S.C. § 227(c)(5). To calculate an award of statutory damages under [Section] 227(c)(5), the Court must determine (1) that the defendant initiated the offending solicitations; (2) the number of TCPA violations plaintiff has established; (3) the appropriate amount to award for each established violation; and (3) whether an increased damages award is warranted. *See Oparaji*, 2023 WL 7687217, at *2–3. The court has discretion to award up to three times that amount if it finds the defendant engaged in willful or knowing violations of the statute. *Id.* § 227(b)(3). Courts award treble damages on a finding that a defendant acted "with knowledge that the conduct violates the law." *Oparaji*, 2023 WL 7687217, at *4 (quoting *Santiago v. Merriman River Assocs., LLC*, No. 17-CV-2054, 2018 WL 2465358, at *5 (D. Conn. June 1, 2018)). A plaintiff's presence on the DNCR does not justify a treble damages award. *Id.* at *4.

First, Silva has shown that Seven Rock Life sent her the fifteen text messages. In support of the Renewed Motion for Default Judgment, Silva submits a composite exhibit of the dates, times, and contents of the fifteen messages. (Ex. D, Shamis Decl.) The screenshots support Silva's well-pled allegations that the texts were sent by Seven Rock Life because they show that the texts were sent from 1-844-617-2347, a number that Silva alleges belongs to Seven Rock Life, and they all begin "SRL: . . . " *See Oparaji*, 2023 WL 7687217, at *2 ("Plaintiff must establish that defendant or its agent initiated the offending calls: this is a fundamental element of a TCPA claim against defendant.")

Second, Silva has plausibly alleged fifteen violations of the TCPA. Silva supports the

allegations in the Complaint with screenshots showing that she received fifteen telemarketing

texts during June and July 2023. (Ex. D, Shamis Decl.)

Third, Silva seeks an award of $500 for each of the fifteen text messages sent in violation

of the statute. (Shamis Decl. ¶ 10.) The TCPA provides that a court may award "up to $500" for

each violation but is silent as to what factors govern that exercise of discretion. *See* 47 U.S.C.

§ 227(c)(5)(b). The Court in *Oparaji* was the first within the Second Circuit to consider statutory

damages awarded solely under Section 227(c)(5) of the TCPA. *Oparaji*, 2023 WL 7687217, at

*4.  The Court considered the deterrence purpose of the TCPA and "factors such as the severity

or minimal nature of the violation; whether there was actual damage to the victim; the extent of

any intrusion into the victim's privacy; the relative financial burdens of the parties; whether there

was a reasonable purpose for the violation; and whether there was any useful purpose to be

served by imposing the statutory damages amount." *Id.* (quotation marks omitted). Ultimately,

the Court awarded the *Oparaji* plaintiff $500 per violation where he alleged that he "was on the

DNCR for years prior to defendant's violations and that he twice informed defendant that he was

not interested in their services, but defendant continued to call." *Id.* Here, Silva has similarly

alleged that she was on the DNCR for years prior to receiving the telemarketing texts, but she

has not alleged that she continued to receive the texts after telling Seven Rock Life that she was

not interested in its services. (Compl. ¶ 22.) In fact, the screenshots appear to show that after

Silva opted out of the texts, Seven Rock Life stopped sending them. (*See* Shamis Decl., Ex. D at

9.) Therefore, the Court awards Silva $6,000, representing $400 per violation.

Fourth, Silva has not demonstrated that an enhanced damages award is appropriate. The

Complaint does not allege facts supporting a finding that Seven Rock Life sent the texts "with

knowledge that the conduct violate[d] the law," and Silva's allegations that she was on the DNCR for years prior to receiving the texts alone do not support a treble damages award. *Oparaji*, 2023 WL 7687217, at *4.

### B. Silva is Entitled to Damages Under the OTSA

A party "who is aggrieved by a violation of this act may" sue to recover "actual damages or [$500], whichever is greater." Okla. Stat. Ann. tit. 15, § 775C.6.A. Here, Silva seeks an award of $500 for each of the fifteen text messages sent in violation of the OTSA. (Shamis Decl. ¶ 10.) Silva does not allege that her actual damages are greater than $500, nor does she submit any evidence supporting such a finding. Accordingly, because Silva has stated a claim for an OTSA violation, the Court awards Silva $7,500, representing $500 for each of the fifteen text messages.

### C. Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961(a), "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (quotation marks, citation, and alteration omitted). Because no judicial discretion is permitted in the calculation of post-judgment interest, the Court awards Silva post-judgment interest at the rate set forth in 28 U.S.C. § 1961 and calculated from the date that judgment is entered until Seven Rock Life satisfies the judgment.

## CONCLUSION

For the reasons set forth above, the Court grants the Renewed Motion for Default Judgment (ECF No. 11) and awards Silva $6,000 in statutory damages under the TCPA, $7,500

in statutory damages under the OTSA, and post-judgment interest. The Clerk is directed to enter

judgment and close the case.

Dated: Central Islip, New York
June 28, 2024

_____ */s/ Nusrat J. Choudhury* _____
NUSRAT J. CHOUDHURY
United States District Judge